UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STONE STRONG, LLC,

    Plaintiff,

-vs-                                        Case No.    5:08-cv-503-Oc-10DAB

DEL ZOTTO PRODUCTS OF FLORIDA,
INC., DOES 1 THROUGH 10, inclusive,

    Defendants.
_____/

**MEMORANDUM OPINION**

This is an action for patent infringement with defenses of invalidity. Jurisdiction is predicated upon 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a). Venue lies in this district.

This case was tried before the court without a jury. It was submitted for decision after oral arguments by counsel presented upon the close of all the evidence.

Upon due consideration, the court has decided in favor of the Plaintiff, Stone Strong, LLC, and against the Defendant, Del Zotto Products of Florida, Inc. The Plaintiff has waived its claim for monetary damages (see Doc. 85, Joint Pretrial Statement, p. 13), and now seeks only injunctive relief. Such relief will be granted.

**Discussion**

There are two patents in suit owned by Stone Strong. The first is U. S. Patent No. 6,796,098 issued September 28, 2004. The second is U. S. Patent No. 7,073,304 issued July 11, 2006. The 098 Patent covers a system and method for making a large

precast concrete block designed for use in constructing retaining walls. The 304 Patent covers a system and method for making a corner block for use in conjunction with the blocks covered by the 098 Patent.

In general terms, the Stone Strong concrete blocks made as taught in the principal patent in suit (the 098 Patent) have two distinctive features. One feature (not mentioned in the claims of the patent) is the large size of the block. It has a face of 24 square feet, measuring 8 feet long, 3 feet high and 3 feet wide. The second, and most important feature of the blocks, is a lift loop of steel protruding from the top of the block which fits into a recess in the bottom of the block above thereby fulfilling a dual function: first, it enables the lifting and placement of the block in the wall by a crane or similar machine; and, second, it enables the alignment of the blocks one upon another as the building of the wall proceeds.

The 098 Patent contains four independent claims - - Claims 1, 7, 13 and 14 - - directed to the block itself, and independent claim 22 which recites a method for building a wall. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) (construction of the terms of patent claims is exclusively within the province of the Court).

Independent claim 1 describes a block with a front surface, first and second side surfaces, a top surface, a bottom surface and a back surface, where:

> . . . the top surface includes at least one alignment device, each alignment device comprising a device for lifting the block when the block is being placed; [and] . . . the bottom surface including at least one recess positioned to receive at least one alignment device of a previously-placed block

2

>   to align the block with respect to the previously-placed block.[1]

Independent claims 7 and 13 further specify a block where "the top surface includes at least one lift and alignment device for lifting the block when the block is being placed" and where "the bottom surface includ[es] at least one recess positioned to receive at least one lift and alignment device of a previously placed block."[2]

As explained in the specification:

> The block includes one or more lift and alignment devices in the block that allow the block to be lifted using a suitable lifting apparatus, such as a crane, forklift, backhoe, etc. The block includes one or more recessed portions in the bottom surface of the block positioned to receive the protruding lift and alignment device of a previously-laid block underneath, thereby helping to align the block with the previously-laid block.[3]

Independent claim 22 recites a method for building a block wall in which a first level of blocks is laid with lift and alignment devices, and a subsequent level of blocks is laid so that the recesses align with the lift and alignment devices of the first level of blocks.[4]

The 304 Patent contains similar claims relating to a corner block. There are seven independent claims: claims 1, 9, 10, 11, 21, 22 and 23. Independent claim 1 describes a corner block comprising a back surface, first and second side surfaces,

---

[1] 098 Patent at column 13, claim 1.

[2] 098 Patent at column 14, claims 7 & 13.

[3] 098 Patent at column 1, lines 51-59.

[4] 098 Patent at columns 15-16, claim 22.

3

top surface and bottom surface where, in relevant part, "a top surface includes at least one alignment device comprising a device for lifting the block when the block is being placed" and "a bottom surface including at least one recess positioned to receive at least one alignment device of a previously-placed block to align the block with respect to the previously placed block."[5] Independent claim 9 is identical to claim 1 except that it includes an additional limitation related to the angle between the first and second sides of the block.[6] Independent claim 10 is identical to claim 1 except that it includes an additional limitation related to the angles of the top and bottom surfaces.[7] Independent claims 11, 21, 22 and 23 describe a wall system and a method for building a block wall involving corner blocks and regular blocks using the same type of aligning mechanism described in claim 1.[8]

Del Zotto is in the business of building forms and manufacturing precast concrete products. It began developing its Gold Rock blocks and the form for creating Gold Rock blocks in 2006 in response to the demands of a construction project in the Bahamas. Although Del Zotto contends that it randomly chose the dimensions for the Gold Rock blocks, they share the same dimensions with the Stone Strong blocks - - measuring 8 feet long, 3 feet high and 3 feet wide. (See Plaintiff's Ex. 33). There is

---

[5] 304 Patent at column 17, claim 1.

[6] 304 Patent at column 18, claim 9.

[7] 304 Patent at column 18, claim 10.

[8] 304 Patent at column 18, claim 11.

4

no evidence of any entity other than Stone Strong and Del Zotto having offered or utilized concrete blocks for retaining walls that have these dimensions.

The Del Zotto Gold Rock blocks also have a protruding lifting device on the top surface and a recess on the bottom surface. Prior to the design of the Gold Rock block, Del Zotto had never designed a block or a form for making blocks that had a similar recess or notch on the bottom surface. According to Del Zotto, customers using its form may manually set whatever type of lifting device they choose while the concrete is curing. However, with regard to the blocks Del Zotto has manufactured, it has used a semicircular steel pick up or lifting loop, and those same lifting devices are shown in Del Zotto's marketing brochure (Plaintiff's Ex. 19; see also Plaintiff's Exs. 28 and 33). The Gold Rock Blocks also have recesses or notches on the bottom of the blocks extending through the entire length of the block permitting an upper block to be passed over the surface of a lower block without interference by the lifting loops on the top surface of the lower block. This permits vertical stacking of the blocks, for storage or during construction, without damage to the lifting loops.

The notch or recess on the bottom of Del Zotto's Gold Rock blocks, as shown by Del Zotto's drawings (see Plaintiff's Ex. 33), is one foot wide at the bottom, is five inches high, and has angled sides sloping inward so as to produce a width of nine and a half inches at the top. The lifting loop typically measures four inches in diameter. It is possible, therefore, despite Del Zotto's argument to the contrary, that in the process of building a wall with Gold Rock blocks, the blocks can be positioned in such

5

a way, one over the other, that the notch or recess can be used to aid in aligning the blocks in their relationship to each other in what is known as a "running bond."

Although Del Zotto created a marketing brochure for its Gold Rock blocks in 2007 or 2008, and built precast forms for the manufacture of the blocks, it has not made any sale of the forms or the blocks to anyone else pending the outcome of this litigation. It has made and used some of the blocks, however, in constructing a storage bin on its own premises in Ocala.

The core determinative issue is the case is whether the lift loop on the top of Del Zotto's Gold Rock block (and the notch or recess on the bottom of the Gold Rock block) serves an alignment function in addition to the lift function. It is does, there is infringement of the claims of Stone Strong's patents in suit; if it does not - - if the loops provide only a means of lifting the block - - there is no infringement. This is so even though Del Zotto never actually sold any of its Gold Rock blocks. See 35 U.S.C. § 271(a) (defining patent infringement to include using, making, offering to sell, or selling any patented invention).

The key factor in resolving this determinative issue is the size of the recess or notch on the bottom of the blocks in relation to the size of the lift loop on the top of the blocks. Obviously, as the tolerance between the two features increases, the efficiency of the alignment function rapidly decreases to a point that it becomes nonexistent.[9]

---

[9] The Plaintiff's own expert witness, Daniel Thiele, testified about this as follows:

> Q. Even if you wanted to have an exposed lift bar, could you create a notch or a, a void such that it would be wide enough to include the lift bar and, but too wide to serve an alignment function?

6

Clearly, however, a notch or recess that is one foot wide at the bottom, decreasing to 9½ inches at the top, with a height of 5 inches receiving a steel loop 4 inches in diameter, provides a capability of being used as an aid in alignment, and the claims of the patents in suit (as previously quoted) were literally infringed when Del Zotto offered to sell its Gold Rock forms and blocks.[10]  See Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 622-23 (Fed. Cir. 1995) ("[A]n accused product that sometimes, but not always, embodies a claimed method nonetheless infringes."); Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 20 (Fed. Cir 1984) ("[I]mperfect practice of an invention does not avoid infringement."); Roche Prods., Inc. v. Bolar Pharmaceutical Co., 733 F.2d 858, 861

---

> A   Yes, it would be possible.
>
> Q.   And how would that work?
>
> A.   As we discussed before the break, I, working through it, if we extended that recess from the face shell to the rear shell, it would be too wide to form that alignment function.
>
> Q.   In that case then you could store the blocks right on top of the other?
>
> A.   Yes, you could.
>
> Q.   In your opinion, that kid of block would not infringe the patent, is that correct?
>
> A.   That's correct.

[10]   For these same reasons, the Court further finds that Del Zotto infringed upon Stone Strong's patents under the doctrine of equivalents because all of the limitations of Stone Strong's patents are found in Del Zotto's Gold Rock blocks.  See Aquatex Industries, Inc. v. Techniche Solutions, 478 F.3d 1320, 1326 (Fed. Cir. 2007).  The Court also concludes that by offering the Gold Rock blocks for sale – including for sale outside of the United States – Del Zotto indirectly infringed on Stone Strong's patents. See 35 U.S.C. § 271(f)(1); Microsoft Corp. v. AT&T Corp., 550 U.S. 437 (2007).

7

(Fed. Cir. 1984) ("Section 271(a) prohibits, on its face, any and all uses of a patented invention.").

With respect to the defenses of anticipation and obviousness, suffice it to say that those defenses have not been established by the Defendant through clear and convincing evidence, and the patents in suit are valid and enforceable. See Ball Aerosol and Speciality Container, Inc. v. Limited Brands, Inc., 555 F.3d 984 (Fed. Cir. 2009) ("A claimed invention is invalid for obviousness 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'") (quoting 35 U.S.C. § 103); Abbott Laboratories v. Sandoz, Inc., 544 F.3d 1341 (Fed. Cir. 2008) ("Anticipation in patent usage means that the claimed invention was previously known and described in a printed publication, explicitly or inherently. . . . and requires that every claim element and limitation is set forth in a single prior art reference, in the same form and order as in the claim.").

It follows that the Plaintiff is entitled to injunctive relief. See W.L. Gore & Associates, Inc. v. Garlock, Inc., 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) (the fact that a defendant has voluntarily stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place).

The Plaintiff may have ten (10) days within which to file and submit a proposed, final injunctive decree.  The Defendant may have ten (10) days thereafter within which

8

to respond by making objections or suggestions concerning the form of the decree without prejudice of any kind to its right of appeal or otherwise challenge the granting of injunctive relief in any form.  As required by Rule 65(d), Federal Rules of Civil Procedure, the proposed injunction must "state its terms specifically and describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained. . . ."

This is an interlocutory order.  Final Judgment will be entered in the form of the injunctive decree yet to be finalized.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this <u>25th</u> day of October, 2010.

_____
UNITED STATES DISTRICT JUDGE


Copies to:   Counsel of Record
             Maurya McSheehy